## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES FIDELITY &** | : | **CIVIL ACTION** |
| **GUARANTY COMPANY** | : | **NO. 302-CV-524(AWT)** |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **NERI CONSTRUCTION, LLC, et. al.** | : | |
| | : | |
| **Defendants** | : | **MARCH 12, 2004** |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This Memorandum is submitted by Defendants Neri Construction, LLC, the Neri Corp., and Joan C. Neri (hereinafter the "Defendants" unless specifically referred to) in opposition to the motion for summary judgment dated January 26, 2004 filed by plaintiff United States Fidelity & Guaranty Co. ("USF&G"). Defendants oppose this motion on the grounds that USF&G has failed to sustain its burden of showing that it is entitled to judgment as a matter of law and that there exist genuine issues of material fact.

By its motion for summary judgment, USF&G seeks to recover attorneys fees expended in defense of the Elm Haven Action[1], attorneys fees incurred in prosecuting the present action brought against Defendants, fees and expenses allegedly occurred by USF&G in defending against claims brought by Neri Construction's subcontractors on the Elm Haven Project, fees which USF&G may pay in the future and unspecified costs

---

[1] Elm Haven Construction Limited Partnership v. Neri Construction, LLC, United States District Court District of Connecticut civil action number 3:01 CV 1307(GLG).

allegedly incurred by USF&G. USF&G has not differentiated the legal fees allegedly incurred in the Elm Haven Action from those incurred in this action, nor has it met its burden to demonstrate that the fees incurred were reasonable. In addition, USF&G has not provided an adequate explanation for the costs allegedly incurred nor has it met its burden of proof with respect to future attorney's fees. Finally, USF&G has not provided full and completed copies of invoices, but only invoices with multiple redactions, and without complete invoices, a determination of reasonableness cannot be made.

## I.    Background

### A.    The Claims

The current dispute arises out of a Master Surety Agreement in favor of USF&G dated March 2, 1998 signed by Defendants. After the signing of the Master Surety Agreement, USF&G issued payment and performance bonds for Neri Construction on the Elm Haven Housing Project located in New Haven, Connecticut.   The Master Surety Agreement contains two provisions relevant to USF&G's claims in this motion. The first is contained in Paragraph IV regarding the duty of the indemnitors for "good faith" payments by USF&G for USF&G's liability to third parties or for the protection of USF&G's rights or to "avoid or lessen" USF&G's liability to third parties.[2]  The second is contained in paragraph V(c) of the Master Surety Agreement and provides:

> [I]n the event SURETY should file suit at law or in equity to enforce the terms of this AGREEMENT, SURETY shall be entitled to recover its own reasonable attorney's fees and expenses from UNDERSIGNED in connection with such suit.

---

[2]  Quoted in the Memorandum of Law in Support of United States Fidelity & Guaranty Company's Motion for Summary Judgment dated January 26, 2004 (hereinafter the "USF&G Memorandum") at pp. 4-5; see Ex. 1.A attached to USF&G's Memorandum.

(emphasis added).[3]

USF&G's motion for summary judgment claims that it is entitled to $130,124.08 consisting of:

1.    $121,373.12 in attorneys fees and costs incurred in "investigating, processing and defending claims asserted against the Payment Bond, in defending the Lawsuit, and in prosecuting the present action" (Schoenhaar Affidavit at par. 18);

2.    $194.90 in billed but unpaid attorney's fees and costs (Schoenhaar Affidavit at par. 19);

3.    $7,500.00 in anticipated future attorney's fees and costs (Schoenhaar Affidavit at par. 20); and

4.    $1,056.06 in "administrative and other expenses" (Schoenhaar Affidavit at par. 21).

Defendants submit that much of the attorney's fees expended were not required in the circumstances of these cases; that, without a breakdown of the attorney's fees between the Elm Haven Action and the present case, a proper award cannot be made; that, without unredacted billing statements, a determination of reasonableness cannot be made;  that certain of the attorney's fees as more particularly set forth below were not reasonable, and that USF&G has not made a sufficient showing for the inclusion of the anticipated attorney's fees and "administrative and other expenses" in a judgment.

A major consideration regarding the attorney's fees is that these fees have been incurred in a situation where USF&G informed Neri Construction and the indemnitors that it had no liability and expected to make no payments under its payment and performance

---

[3]  Although this provision is quoted in USF&G's Memorandum at pp. 5-6, the memorandum contains no discussion of this provision.

bonds and in which it was later determined that USF&G actually had no liability. Furthermore, these fees were incurred in a situation where the Defendants did not dispute that they were required to indemnify USF&G for (1) any amounts for which USF&G was found liable to Elm Haven under the terms of the performance bond;[4]  (2) where the Defendants admitted that, under the terms of the Master Surety Agreement, they were required to indemnify and reimburse USF&G for reasonable attorney's fees incurred in defense of Elm Haven's Action against USF&G based upon the performance bond; and (3) in which Defendants offered to post collateral to secure the potential obligations of Defendants to USF&G.   In short, much of the expenditures by USF&G were neither necessary to nor required to be incurred, and in which many of the charges incurred were not reasonable.

### B.    The Litigation

By summons and complaint dated July 11, 2001, Elm Haven commenced its action against Neri Construction and USF&G.  In connection with the Elm Haven Action, Neri Construction was informed by USF&G that it expected to make no payment under the performance bond claims since Neri Construction had never been properly defaulted and proper notice had never been given to USF&G in order to make a claim under the performance bond (see Affidavit of Carl Neri).  Despite knowledge of the flawed basis of the Elm Haven claims against USF&G, USF&G expended considerable time and attorney's fees in connection with the Elm Haven Action before filing a Motion for Summary Judgment, which motion was granted on August 22, 2003. (Affidavit of Dennis C. Cavanaugh, par. 6, attached to USF&G's Memorandum).   In addition, despite being

---

[4]  Additionally in the Elm Haven Action, claims for "bad faith" were made against USF&G for its handling of the Elm Haven claim, which action was not covered by the terms of the Master Surety Agreement.

informed by Defendants that they were willing to post collateral for the amount of USF&G's expected liability, USF&G commenced the present lawsuit seeking damages and attorney's fees.

During the present litigation, USF&G filed an application for prejudgment remedy, which application was heard over two days by the Hon. Donna Martinez. This hearing was held despite Defendants' explicit statement as follows:

> Defendants do not object to the granting of a prejudgment remedy in favor of USF&G to the extent that USF&G seeks to obtain security for attorney's fees and costs that it might incur in defense of claims asserted against it which are covered by bonds issued at the request of the Defendants. Such a prejudgment remedy should issue only upon a determination by the court of the appropriate amount of such a prejudgment remedy.

Memorandum of Law for Hearing on Prejudgment Remedy filed by Defendants on May 29, 2002, p. 1. In fact, following further briefing, a two-day testimonial hearing and oral argument, the prejudgment remedy granted by Judge Martinez was only for attorney's fees incurred by USF&G as to which evidence had been presented. Ruling on Motion for Prejudgment Remedy, p. 13.[5] USF&G then filed an objection to Judge Martinez ruling on the prejudgment remedy and requested that this court reverse the decision. At the suggestion of this court, and although not previously filed, USF&G filed a motion for preliminary injunction dated September 19, 2002 which, after argument, was granted by this court. Defendants filed a notice of appeal of the order for preliminary injunction to the United States Court of Appeals for the Second Circuit.[6]

---

[5] As noted by Judge Martinez, the evidence of attorney's fees was presented by way of an affidavit of USF&G's counsel, and Defendants did not object to the affidavit nor to the prejudgment remedy based on what was shown in the affidavit. Minimal time was expended on this portion of the prejudgment remedy.

[6] As of this date, no decision has been issued by the Second Circuit on this appeal.

In response to the Order for Preliminary Injunction, Defendants provided USF&G with appraisals and available evidence as to their assets and further provided forms for security interests in such assets. Despite providing this information and forms, USF&G determined that it would conduct examinations of defendants Vincent Neri, Joan Neri, Carl Neri, the President of defendant Neri Corp., and Kimberly Neri, a representative of Neri Construction and Neri Corp., which examinations occurred on December 20 and 21, 2002. In connection with the Preliminary Injunction, USF&G required that the Defendants sign the USF&G forms of security agreement and mortgages by which USF&G took security interests in all property owned by the Defendants.[7] Although USF&G had obtained security interests in all of the Defendants' assets, it thereafter filed a motion for contempt, alleging non-compliance with the Order for Preliminary.

In the Elm Haven Action, almost two years after the case was filed, USF&G filed a motion for summary judgment.[8] USF&G's motion was granted by decision dated August 25, 2003.[9]   USF&G's motion was based on the fact that Elm Haven had not defaulted Neri Construction on the Elm Haven project and that without such default and notice thereof, USF&G had no obligation under its performance bond on the Elm Haven project. USF&G had knowledge of this lack of notice from the time that Elm Haven action was filed in 2001 (see testimony of Roxanne Kasten, at hearing on prejudgment remedy, June 4, 2002, pp. 88, 109-111). Despite such knowledge, USF&G did not move to dismiss the Elm Haven case, but rather participated in the case for almost two years, and now seeks to recover from the Defendants the amounts allegedly expended in such defense.

---

[7]  No security interest was taken in Joan Neri's residence at 64 Groveway, Clinton, since USF&G finally recognized that the residence had been specifically excluded from the Master Surety Agreement.

[8]  Dated April 3, 2003, Docket No. 70.

[9]  Docket No. 91.

## II. <u>ARGUMENT</u>

USF&G seeks summary judgment as to Count Three of the Complaint.[10]  In this count, USF&G alleges that Defendants "breached the Master Surety Agreement" by failing to pay "bills for labor, materials and equipment furnished to the Project, together with other losses, attorney's fees, investigation expenses and costs." (Complaint, par. 19). This count also claims that Defendants failed and refused to cooperate with USF&G in investigating claims asserted under the payment and performance bonds furnished on the Elm Haven Project. However, in its motion, there are no facts set forth to support any claim that USF&G paid any amounts for labor materials and equipment furnished to the Elm Haven Project, or any facts set forth to support the claim that Defendants failed to cooperate with USF&G in investigating any claims. The only claims set forth in the motion for summary judgment relate to "attorney's fees, investigation expenses and costs."

As noted throughout this litigation and prior thereto, there is no dispute regarding the validity of the Master Surety Agreement.[11]  Similarly, Defendants have always acknowledged that they must reimburse USF&G for any amounts paid to any claimant under the payment and performance bonds issued on behalf of Neri Construction by USF&G. However, there is no evidence of any payment made by USF&G under the Elm Haven payment bond.[12] Similarly, there is no evidence of any payment made by USF&G to any claimant under the Elm Haven payment bond.[13]

---

[10]  Although the USF&G motion is termed "summary judgment," it, in fact, seeks judgment only as to Count Three.

[11]  Throughout USF&G's Memorandum, statements of Defendants and counsel for Defendants are cited whereby they acknowledge the terms of the Master Surety Agreement.

[12]  In the Schoenhaar Affidavit attached to USF&G's Memorandum, letters regarding claims under the Elm Haven payment bond are attached (Ex. B); no evidence of any payment is provided and, upon information and belief, no payment was made. See Affidavit of Carl Neri attached hereto.

[13]  The only claims ever presented under the performance bond were those of Elm Haven, as to which claims summary judgment was rendered in favor of USF&G.

With respect to USF&G's claims for "attorney's fees, investigation expenses and costs," USF&G has failed to set forth appropriate proof, and with the proof submitted, there still exist genuine issues of materials fact which must be tried. Two aspects of this claim deserve comment. First, by way of the Schoenhaar Affidavit ( at par. 21), USF&G claims $1,056.06 in "administrative and other costs" and references Exhibit E. However, Exhibit E contains approximately 29 entries comprised of thousands of dollars in purported expenses, and no explanation of the claimed amount of $1,056.06 is given; there is no support for the reasonableness of the amount claimed and summary judgment is not appropriate. Second, with respect to the claim for $7,500  for attorney's fees and costs "through the prosecution of the current motion for summary judgment," (Schoenhaar Affidavit at par. 20), there is no basis to conclude that Schoenhaar is competent to testify to such facts, and this amount of possible future attorney's fees should not be allowed. It may be further noted that USF&G cites no authority for the proposition that it may obtain a monetary judgment for attorney's fees not yet incurred.

The major issue addressed in USF&G's Memorandum is the request for judgment for attorney's fees and costs in the amount of $121,373.12 which USF&G claims to have paid  "in investigating, processing and defending claims asserted against the Payment Bond, in defending the Lawsuit [the Elm Haven action], and in prosecuting the present action." (Schoenhaar Affidavit at par. 18).

With respect to this claim, USF&G claims that it is entitled to recover attorney's fees merely upon the showing of payment. See USF&G Memorandum at 19 through 21. However, the cases cited by USF&G concern payments made to claimants under a bond and not to attorney's fees incurred in defending a claim under a bond, such as the

attorney's fees incurred by USF&G in the Elm Haven Action. Most importantly, none of the cases concerned even discusses the award of attorney's fees in bringing a collection action under an indemnity agreement.

### A.    Attorney's Fees in the Pending Action

In the present case, the Master Surety Agreement provides that USF&G may recover "reasonable attorney's fees and expenses" incurred in this action. With respect to the claims of USF&G, there is no breakdown between attorney's fees incurred in the Elm Haven litigation and attorney's fees incurred in the present litigation, and it is not reasonably possible to distinguish all of the charges on the bills provided. In addition, there is no requisite showing by USF&G of reasonableness. Finally, there are specific objections to certain portions of these bills which show that there are issues of fact regarding the reasonableness to the attorney's fees incurred.

Connecticut Courts recognize a difference between attorney's fees expended in the defense of an underlying action from those expended in enforcing the indemnity agreement. In Sloan v. Kubitsky, 48 Conn. App. 835, 712 A. 2d. 966 (1998), the Connecticut Appellate Court held that, in the absence of a provision in an indemnity agreement which did not provide for attorney's fees in enforcing the indemnity agreement, only the attorney's fees associated with the defense of the underlying action could be awarded. Id. at 843. See also Burr v. Lichtenheim, 190 Conn. 351, 364, 460 A. 2d 1290 (1983). Of course, the Master Surety Agreement in the present case does have a provision for the award of attorney's fees in enforcing the agreement. Master Surety Agreement at par. V(c). *However*, USF&G's argument that the award of attorney's fees incurred in pursuing this case is governed by the "prima facie" standard contained in par. IV of the

Master Surety Agreement has no support. In short, USF&G must prove that the fees claimed in this case were reasonable.

With respect to the standards to be applied in considering attorney's fees to be awarded with respect to the present action, Connecticut does not require expert testimony, but generally uses details of time consumed, efforts devoted to the case and activities of counsel throughout the case. See Piantedosi v. Florida, 186 Conn. 275, 278-79 (1982), Republic Insurance Co. v. Pat DiNardo Auto Sales, Inc., 44 Conn. Supp. 207, 222-223 (1995). Federal Courts in Connecticut have explicitly used the "lodestar test"[14] in determining fees awarded under the Connecticut Unfair Trade Practices Act. Gervais v. O'Connell, Harris & Associates, Inc., 297 F. Supp. 2d 435 (D. Conn. 2003), which test specifically includes as a factor the results obtained. See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)("If, on the other hand, a plaintiff has achieved only partial or limited success, the product of the hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."). As set forth in detail below, Defendants have specific objections to USF&G's claim for attorney's fees incurred in this action which preclude the granting of summary judgment.

**B.    Attorney's Fees in the Elm Haven Action**

With respect to the attorney's fees incurred in defense of the Elm Haven litigation, even if the liability of Defendants for these fees were governed by Par. IV of the Master Surety Agreement, the recovery of such fees is determined under a "reasonableness" standard. In Ideal Electronic Security Co., Inc. v. International Fidelity Insurance Co., 129 F. 3d 143 (D.C. Cir. 1997) ("Ideal Electronic"), the court was called upon to determine

---

[14] See Gisbrecht V. Barnhart, 535 U.S. 789, 798—805 for a thorough discussion of fee shifting under the lodestar criteria.

precisely the standards to be applied for recovery of attorney's fees incurred by a surety in defense of an underlying bond claim. In <u>Ideal Electronic</u>, the surety defended a subcontractor's claim brought against it on a payment bond issued for Ideal Electronic on a construction project. After summary judgment was granted in favor of the surety against the subcontractor on the bond claim, it moved for summary judgment against Ideal Electronic for attorney's fees incurred in defending the bond claim. The trial court granted the motion for summary judgment in favor of the surety for fees incurred in its defense of the bond claim, but declined to award the amount of attorney's fees for time entries which were "redacted" under a claim of attorney-client privilege. In an opinion by Chief Judge Harry T. Edwards, the District of Columbia Court of Appeals reversed the decision of the trial court. After first determining that the surety's decision to retain separate counsel was appropriate, the court then addressed the award of attorney's fees and determined that a "reasonableness" standard applied. The court stated:

> Although IFIC [the surety] obviously has some discretion under the parties' agreement to decide about the scope of the legal work for which it contracts, any decisions to pay counsel must pass a test of reasonableness in order to be in good faith. Indeed, if good faith in this context did not include reasonableness, the indemnitee would have no incentive to police its attorneys' activities and charges, since it could simply dump any and all charges billed onto the indemnitor. Such a result would make no sense.

129 F. 3d at 150. The Court of Appeals also addressed the surety's argument that the "vouchers or other evidence of any payments" provision required indemnification for the full amount of the attorney billing statement submitted.

> This argument fails upon assertion, for the contract provision relief upon by IFIC says only that "vouchers" shall be "*prima facie evidence* of the fact and amount of liability to the Surety." This confirms that something more than evidence of mere payment will be required if a charge is challenged. Thus, this provision is hardly conclusive with regard to the amount of a reasonable

fee award, but rather simply shifts to Ideal the burden of proving that the fees claimed are excessive."

129 F. 3d at 151.[15]

The Court of Appeals also addressed the fact that portions of the billing statements were redacted under a claim of attorney-client privilege, just as USF&G has done in the present case. The court concluded:

> By claiming indemnification of attorney's fees from Ideal and offering the billing statements as evidence of the same, IFIC waived its attorney-client privilege with respect to the redacted portions of the billing statements and any other communications going to the reasonableness of the amount of the fee award. [citation omitted] If IFIC opts to claim indemnity for attorney's fees from Ideal, it must disclose the billing statements itemizing those fees in its entirety, notwithstanding its claim that portions of the billing statements are privileged. ... Thus, although "the nature and amount of proof necessary to determine reasonableness" is included within the trial court's scope of discretion in determining a reasonable fee award [citation omitted], we hold that the District Court abused its discretion in failing to require IFIC to disclose the unredacted portions of the billing statements.

129 F. 3d at 152.

### C.    Specific Objections to Claims For Attorney's Fees

With respect to USF&G's claim for attorney's fees incurred, there is no division of such fees between the Elm Haven Action and the present case, i.e. attorney's fees and expenses are set forth on invoices without distinguishing which were incurred in the present action and which were incurred in the defense of the Elm Haven Action. Time entries do not explicitly reference either the present litigation or the Elm Haven litigation, and without such

---

[15] Although Connecticut has interpreted similar provisions to shift the burden of proof to indemnitors at trial upon a showing of payment by the surety, PSE Consulting, Inc. v. Frank Mercede and Sons, Inc., 267 Conn. 279, 292-294 (2004), the logic of the D.C. Circuit applies as to attorney's fees.

breakdown, it is impossible to determine the amounts incurred in each case. Despite this difficulty, Defendants make the following specific objections to USF&G's claim.[16]

### 1.    Redacted Time Entries

As set forth by the District of Columbia Court of Appeals in <u>Ideal Electronic</u>, an award of "reasonable" attorney's fees cannot be based on redacted billing statements. In the present case, the billing statement contains numerous redacted entries for which indemnity is claimed. See, e.g. statements dated, June 26, 2002, July 16, 2002, August 30, 2002, September 19, 2002, etc.

### 2.    Prejudgment Remedy Activities

As previously noted, a substantial amount of time was expended on preparation for and the hearing on USF&G's application for pre-judgment remedy, which culminated in a two-day testimonial hearing. The result was a prejudgment remedy for attorney's fees expended, which amount was uncontested by Defendants. See billing statements of June 26, 2002 through September 19, 2002. As noted previously, since the results obtained are considered in determining the amount of reasonable attorney's fees, these fees were not reasonable.[17]

### 3.    Delay in Filing Motion for Summary Judgment

As noted above, although the Elm Haven Action was filed in June, 2001, USF&G did not file a motion to dismiss nor move for summary judgment until April, 2003. The motion was based on the fact that Elm Haven did not send a termination or default notice to Neri

---

[16] By not including a specific item in the list, Defendants are not accepting any particular item, but rather reserve their right to inquire concerning any such claim at the trial or hearing to be held to determine the amount of attorney's fees.
[17] Although the Second Circuit has not ruled on Defendants' appeal of the Order for Preliminary Injunction, if the appeal is upheld, similar considerations apply to USF&G's fees incurred in connection with this aspect of the litigation.

Construction or otherwise advise USF&G of its claims under the bonds. See testimony of Roxanne Kasten at Prejudgment Remedy Hearing, June 4, 2002 at 109-111. This fact was known to USF&G at the time of the filing of the Elm Haven Action, yet almost two years of charges for legal fees were incurred prior to the filing of the motion.

### 4.    Financial Examinations of Defendants

Despite being furnished with hundreds of pages of financial information by the Defendants and indemnitors under the Master Surety Agreement, hours of time were expended in conducting depositions of the Defendants and their representatives. See billing statement of January 22, 2003. The result of all of the examinations added nothing to what USF&G ultimately required – security interests in all assets of the Defendants. The expenditure of this time added nothing to the results and was not reasonable.

### 5.    Use of Multiple Attorneys by USF&G

As can be ascertained from the billing statements, there are numerous instances where USF&G employed multiple attorneys where the services of one counsel would be sufficient. For example, when Defendants filed an appeal of the Order for Preliminary Injunction, an attorney unfamiliar with the case was brought in for purposes of the appeal. His activities also included review of activities previously undertaken by counsel for USF&G, review of documents where at least two counsel (Dennis C. Cavanaugh and Peter E. Strniste) were familiar with all aspects of the case. As a result, multiple hours were expended without any showing that a different attorney was required to prepare the brief on behalf of USF&G. See billing statements of April 23 through September 29, 2003.[18] In addition to the time of Attorney Somers, defendants are being asked to reimburse USF&G for discussions between Attorneys Somers, Cavanaugh and Strniste prior to oral argument

on the appeal (See billing statement for September 29, 2003) and the travel time and attendance of *two* counsel at the oral argument.

Similarly, when USF&G was preparing its motion for summary judgment in the Elm Haven Action, yet another attorney was brought into the case, necessitating yet another attorney becoming familiar with the facts, documents and pleadings. It appears that this attorney, Robert M. Barrack, became involved in the Elm Haven Action in September, 2002 (billing statement of October 14, 2002) for involvement in the motion for summary judgment. Attorneys Cavanaugh and Strniste continued their involvement. It appears that Attorney Barrack was involved from September 5 through November 20, 2002, and incurred 78.1 hours of time becoming familiar with the case and preparing the motion for summary judgment in the Elm Haven Action. Despite this amount of time spent by a partner in the firm, the motion for summary judgment required the additional input and involvement of Attorneys Cavanaugh and Strniste.

### 6. Expenses

In addition to attorney's fees, Defendants are being requested to reimburse USF&G for expenses allegedly incurred without explanation for expenses.[19] A review of the billing statements shows items such as copying costs in excess of $2,170, computer charges for research in excess of $700, and Federal Express charges in excess of $256. Defendants do not dispute that some portion of these charges may be reasonable, but, without further explanation, they cannot be determined to be reasonable. Other items require much greater explanation such as the "conference call" charge of $232 on the August 30, 2002 billing statement, and the "travel expenses" for Attorney Somers in the amount of $377.18

---

[18]  It appears that Attorney Somers had 71.1 hours of time on this appeal.
[19]  These are expenses on the invoices of counsel and do not include USF&G's own unexplained expenses.

to attend the oral argument in New York as contained on the October 17, 2003 billing statement. Finally, any "late charges" such as the $162.83 appearing on the November 19, 2003 and any others should not be allowed.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully requested that the motion for summary judgment be denied.

THE DEFENDANTS
NERI CONSTRUCTION, LLC, THE NERI
CORP. and JOAN C. NERI

by: _____
Edwin L. Doernberger
Saxe, Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
Tel. (203) 287-8890
Fax. (203) 287-8847
Fed. Bar No. ct05199

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES FIDELITY &** | : | **CIVIL ACTION** |
| **GUARANTY COMPANY** | : | **NO. 302-CV-524(AWT)** |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **NERI CONSTRUCTION, LLC, et. al.** | : | |
| | : | |
| **Defendants** | : | **MARCH 11, 2004** |

### AFFIDAVIT OF CARL NERI

Carl Neri, being first duly sworn, unoathed, deposes and says:

1.    I am over the age of eighteen, believe in the obligations of an oath, and submit this affidavit based upon my personal knowledge.

2.    I am the president of The Neri Corp. ("Neri Corp.") which company is an indemnitor to United States Fidelity and Guaranty Co. ("USF&G") under that certain Master Surety Agreement dated March 2, 1998.  As president of Neri Corp., I am familiar with all activities of the corporation.

3.    In addition to the foregoing, during the instruction of the Elm Haven project, I served as a representative of Neri Construction, LLC ("Neri Construction") for the project.

4.    During the course of the Elm Haven project, at various times there were disagreements between Elm Haven and Neri Construction both as to contract interpretation, change orders, delays in payment, and Elm Haven's unfounded claims of inadequate performance by Neri Construction.  During the course of this project, I was in touch with various representatives of USF&G, including Steven W. Schoenhaar

("Schoenharr"), and kept USF&G involved as to the issues between Neri Construction and Elm Haven Construction Limited Partnership, the general contractor on the project.

5.     During the Elm Haven project, claims were made by, two Neri Construction subcontractors as to claims for nonpayment by Neri Construction. In each instance of such claim, appropriate documentation was provided to USF&G as to why payment was not made and why payment was not due from Neri Construction to each subcontractor. To my knowledge, in each instance, USF&G accepted the explanation of Neri Construction and did not pay the subcontractor. Upon information and belief, no subcontractor of Neri Construction on the Elm Haven project has ever brought a claim under the payment bond furnished by USF&G. Upon information and belief, the time for commencing litigation under the USF&G payment bond has expired.

6.     With respect to disputes between Elm Haven and Neri Construction, I was advised by Schoenhaar on behalf of USF&G that USF&G believe that the actions of Neri Construction were appropriate.

7.     After Elm Haven filed the litigation against against Neri Construction and USF&G regarding the Elm Haven project, I was advised by Schoenhaar on behalf of USF&G that USF&G was exposed to no liability with respect to the Elm Haven claims and that USF&G expected to make no payments to Elm Haven under the performance bond issued by USF&G for the project.

8.     After Elm Haven filed its lawsuit against Neri Construction, I requested that USF&G use the same counsel as Neri Construction in order to minimize the cost of defense. I was advised by USF&G that USF&G did not believe such representation appropriate since Elm Haven was accusing USF&G of "bad faith" in connection with

2

USF&G's handling of its obligations under the performance bond and that, therefore, USF&G would require separate counsel to defend USF&G's separate interest with regard to the "bad faith" claim.

9.     Prior to the filing of this lawsuit by USF&G against Neri Construction, USF&G never demanded a specific amount of collateral. I offered on behalf of Neri Construction, to post collateral in order that USF&G would be protected with respect to costs to be incurred; however, USF&G never requested prior to the filing of this litigation, a specific amount, and, after the filing of this litigation, USF&G demanded hundreds of thousands of dollars in collateral despite the fact that USF&G expected to make no payments to Elm Haven under the performance bond.

10.     On January 10, 2003, I sent a letter to Schoenhaar at USF&G, a copy of which is attached hereto as Exhibit A, again expressing the fact that Neri Construction and Neri Corp. have always been willing to risk collateral to protect USF&G.

Further affiant sayeth not

Carl A. Neri

Sworn to and subscribed before
me this 12 day of March, 2004.

Commissioner of the Superior Court or
Notary Public

3

# NERI CORP.

**112 Nod Road, Suite 14 ~ P.O. Box 947 Clinton, Connecticut 06413-0947**
**Phone ~ 860-669-NERI (6374)     Facsimile ~ 860-669-3554**

January 10, 2003


FAXED 1-10-03

United States Fidelity & Guaranty Company
Steven W. Schoenhaar
Claims Manager Surety
Post Office Box 1138
Baltimore, MD 21209

SENT VIA FACSIMILE 410-205-0605

RE:     Project :     Elm Haven Housing Hope VI, New Haven CT
                      USF&G Co v Neri Construction, LLC. et al
                      Case No 3:02CV524(AWT)

Dear Mr. Schoenhaar,

The Indemnitors, and specifically Neri Corp. and Neri Construction, LLC. have always been willing and able to provide the Surety with adequate security, despite Surety's position that it does not expect any loss. The assets of Neri Corp. and Neri Construction, LLC. far exceed the $655,000+ at issue in this case and the Surety should reevaluate their actions in this matter and the Surety's obligation to the Indemnitors.

I take issue with certain allegations made toward my company and Joan C. Neri, my wife. With regard to Joan, the Surety's wasted effort to obtain a security interest in two residential parcels not belonging to her or any Indemnitor, and subsequent verbal and written threats (see letter's attached) of filing for "sanctions" and "an action of fraudulent conveyance" was improper to say the least. Furthermore, your counsel also made and continue to make damaging statements with regard to various disbursements made by Neri Corp., with no basis for such allegations.

Any continued effort to further these baseless allegations will be met with vigorous challenge. Furthermore, be advised that making damaging and inappropriate allegations will likely result in an action against the Surety and any individuals participating in same.

All rights, claims and defenses that may be available at law or equity are expressly reserved.

Very Truly Yours,
Neri Corp.

Carl A. Neri
President

enclosures

cc:     E. Doernberger, PC

| Post-it® Fax Note | 7671 | Date 1/10/03 | # of pages ▶ 5 |
|---|---|---|---|
| To S. Schoenhaar | | From Neri | |
| Co./Dept. | | Co. | |
| Phone # | | Phone # | |
| Fax # 410-205-0605 | | Fax # 860-669-3554 | |

**EXHIBIT**
A



**SAXE DOERNBERGER & VITA, P.C.**

1952 WHITNEY AVENUE
HAMDEN, CT 06517
TELELPHONE (203) 287-8890
FACSIMILE    (203) 287-8847
*www.sdvlaw.com*

ATTORNEYS AND COUNSELLORS AT LAW

| Send To | From |
|---|---|
| Kim Neri | Edwin L. Doernberger |
| **Attention** | **Date** |
| | March 11, 2004 |
| **Facsimile Number** | **Telephone Number** |
| 860-669-3554 | 860-669-6374 |

☐ Urgent    ☐ Reply Asap    ☐ Please Comment    ☐    Please Review ☐    For Your Information

Total pages, including cover: 7

Re: USF&G v. Neri Construction, et.al.

Attached please find the revised affidavits.

Please return originals to me via overnight..

IF THERE ARE ANY PROBLEMS REGARDING THIS TELECOPY, OR IF YOU WISH TO SPEAK WITH THE TELECOPY OPERATOR, PLEASE CALL (203) 287-8890. THANK YOU.

The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that the dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES FIDELITY & | : | CIVIL ACTION |
| GUARANTY COMPANY | : | NO. 302-CV-524(AWT) |
|       **Plaintiff** | : | |
| v. | : | |
| | : | |
| NERI CONSTRUCTION, LLC, et. al. | : | |
| | : | |
|       **Defendants** | : | MARCH 11, 2004 |

### AFFIDAVIT OF JOAN C. NERI

Joan C. Neri, being first duly sworn, unoathed, deposes and says:

1.    I am over the age of eighteen, believe in the obligations of an oath, and made this affidavit based upon my personal knowledge.

2.    I am a member and Manager of Neri Construction, LLC and have been since its inception.

3.    In connection with the signing by Neri Construction and myself of the Master Surety Agreement in favor of USF&G, I requested that my personal residence at 64 Grove Way, Clinton, Connecticut, be specifically excluded from the terms of the Master Surety Agreement: USF&G agreed and my residence was specifically excluded. I was advised by representatives of Neri Construction, including, but not limited to, Kimberly Neri who provided financial services and consulting for Neri Construction, and Carl Neri, who was a representative of Neri Construction in connection with the Elm Have project, that USFG demanded that my residence be posted as collateral for indemnification obligations under the Master Surety Agreement, despite the specific

exclusion of the residence from my indemnification obligation. I understand that such demands were made both prior to and after the filing of this litigation by USF&G.

4.    Attached hereto as Exhibit A is a copy of a letter dated January 2, 2003 which I sent to USF&G regarding the collateral to be posted and indemnification..

5.    Attached hereto as Exhibit B is a copy of a letter dated January 2, 2003 which I sent to USF&G on behalf of Neri Construction, which letter discusses the inordinate delay in filing a motion for summary judgment in the Elm Haven Action.

6.    Attached hereto as Exhibit C is a copy of a letter dated January 10, 2003 sent by Vincent A. Neri, the other member of Neri Construction, again setting forth the concerns of Neri Construction about the delay in filing the Motion for Summary Judgment.

Further affiants sayeth not.

_Joan C. Neri_
Joan C. Neri

Sworn to and subscribed before
me this _12_ day of March, 2004.

Commissioner of the Superior Court or
Notary Public

2

# NERI CONSTRUCTION, LLC.

112 Nod Road, Suite 14 ~ P.O. Box 93 Clinton, Connecticut 06413-0093
Phone ~ 860-669-NERI (6374)

| Post-it® Fax Note | 7671 | Date 1-7-03 | # of pages ► 22 |
|---|---|---|---|
| To S. Schoenhaar | | From Neri | |
| Co./Dept. | | Co. | |
| Phone # | | Phone # | |
| Fax # | | Fax # | |

January 2, 2003

United States Fidelity & Guaranty Company
Steven W. Schoenhaar
Claims Manager Surety
Post Office Box 1138
Baltimore, MD 21209

SENT VIA FACSIMILE 410-205-0605

**FAXED**
1-7-03
410-205-0605

RE:    Project :    Elm Haven Housing Hope VI, New Haven CT
                    USF&G Co v Neri Construction, LLC. et al
                    Case No 3:02CV524(AWT)
                    Motion for Order Releasing and Substituting Security Interests

Dear Mr. Schoenhaar,

We write to you regarding the handling of the above litigation and our Motion for Order Releasing and Substituting Security Interests. The history of this case that the indemnitors have been willing to post security and meet the terms of the Indemnity Agreement. We continued our efforts prior to and even after USF&G's several filings requesting the indemnitors to post security. We provided appraisals to support the value of the assets we planned to provide as security to USF&G, yet your attorneys rejected our offers, spent several more days on discovery and demanded far more than the indemnity agreement provides for.

Your counsel insisted that my personal residence located at 64 Groveway be offered as collateral. As a matter of record, my house was always and will always be excluded from any matters relating to USF&G. This fact is known to John O'Keefe, Patricia Gerry, David Hussy, Joan Neri, Carl Neri, Kimberly Neri, all of the Indemnitors and probably others that I may be remiss in mentioning. That exclusion was a condition of executing any agreements with the surety and was memorialized 5/11/98.

The fact is that USF&G indicated that they are confident that they have no exposure on the bond, yet legal fees in the tens of thousands continue to accumulate, not in an effort to remove the Surety from the case, but instead to continue the attack on the Indemnitors. The Indemnitors offered collateral in full satisfaction of the alleged exposure indicated by USF&G, that collateral was rejected and unnecessary legal fees continue to accumulate. The Surety unreasonably rejected the request to tender their defense in an effort to mitigate expense. In fact, many opportunities to resolve issues and mitigate expense and loss have been squandered by the Surety, an issue that will be revisited before we conclude our business with USF&G.

The current motion (see attached) regarding the mortgage deeds and security documents prepared on behalf of USF&G has been filed as a result of your counsel attempting to deprive the Indemnitor's of their rights. USF&G's security documents are completely overreaching and unacceptable. Our position is clearly indicated in our motion and we expect that USF&G will review and respond appropriately, in a manner consistent with the intent of the Indemnity Agreement. An agreement prior to a scheduled hearing would be beneficial to all parties.

Page 1 of 2

**EXHIBIT**

A

We expect you will bring this current issue of collateral to a reasonable conclusion. This correspondence is made with express reservation of all rights and defenses that may be available at law or equity.

Very Truly Yours,
Neri Construction, LLC.

Joan C. Neri
Manager


cc:     E. Doernberger, Esq., SD&V
        D. Doyle, Esq., MLF

# NERI CONSTRUCTION, LLC.

112 Nod Road, Suite 14 ~ P.O. Box 93 Clinton, Connecticut 06413-0093
Phone ~ 860-669-NERI (6374)      Facsimile ~ 860-669-3554

January 2, 2003



United States Fidelity & Guaranty Company
Steven W. Schoenhaar
Claims Manager Surety
Post Office Box 1138
Baltimore, MD 21209                                    SENT VIA FACSIMILE 410-205-0605

RE:    Project :    Elm Haven Housing Hope VI, New Haven CT
                    USF&G Co v Neri Construction, LLC. et al
                    Case No 3:02CV524(AWT)

Dear Mr. Schoenhaar,

In various verbal and written correspondence between the parties it has been acknowledged that no
proper notice of default was provided to the Surety and said defense as well as other defenses are
available to the Surety. Furthermore, over six months ago, counsel of USF&G went on record advising
the court that they were filing a motion for Summary Judgement and to date nothing has been filed,
yet same counsel has spent many unnecessary hours making filings, sending letters and interrogating
Indemnitors. Their actions to create issues and disputes regarding collateral, when it was known to all
that we had already offered adequate collateral, is unacceptable and unreasonable. USF&G could have
been secured months ago (despite Surety's position that they do not expect to have exposure) if not for
your counsel's inability and unwillingness to reasonably conclude the matter. As of December 24th, our
latest inquiry among many inquiries, we were advised that no draft motion or draft affidavit have been
prepared and not a single detail of information regarding this filing has been provided to me or any of
the Indemnitors.

This raises serious concerns regarding the ability and intent of USF&G and their counsel to properly
handle this very critical issue. Your attention to this matter is anticipated. This correspondence is made
with express reservation of all rights and defenses that may be available at law or equity.


Very Truly Yours,
Neri Construction, LLC.

Joan C. Neri
Manager


cc:    E. Doernberger, Esq., SD&V
       D. Doyle, Esq., MLF
       John B. O'Keefe, Marsh



EXHIBIT

B

# NERI CONSTRUCTION, LLC.

P.O. Box 230 Westbrook, Connecticut 06498
Tel ~ 860-664-8042 ·    Facsimile ~ 860-664-9175

January 10, 2003

United States Fidelity & Guaranty Company
Steven W. Schoenhaar
Claims Manager Surety
Post Office Box 1138
Baltimore, MD 21209



SENT VIA FACSIMILE 410-205-0605

RE:    Project :    Elm Haven Housing Hope VI, New Haven CT
USF&G Co v Neri Construction, LLC. et al
Case No 3:02CV524(AWT)

Dear Mr. Schoenhaar,

It has been clear that the position of the Surety is that Neri was not defaulted on the project and that no such notice was properly given to the Surety. I also understand that the Surety has other defenses with regard to the Elm Haven Construction, LP. ("EHC,LP") action. Your counsel has also advised me that they expect to file a Motion for Summary Judgement against EHC,LP with the intention of being removed from the case and relieved of any liability to EHC,LP.

In furtherance of the issue, I recently requested information regarding the Summary Judgement from your counsel and my inquiry was dismissed. To date nothing has been filed and we have not received as much as a draft of the motion. To our surprise, we did receive a letter demanding payment for attorney's fees and notice that if the demand was not met your counsel "will file a Motion for Partial Summary Judgment". We question under what authority this demand is made and request additional information before we can respond. Of immediate concern to us is that your counsel has been ineffective at filing a Motion of Summary Judgement against EHC,LP. yet they seem more than anxious to waste time making unreasonable demands upon the Indemnitors. It appears to us that your counsel may be more interested in logging time creating issues and disputes with the Indemnitors than they are in getting the Surety removed from the case.

For many reasons, we request that the Surety tender the handling of the Summary Judgement to our counsel, to ensure the proper and timely conclusion of this very important matter.

This correspondence is made with express reservation of all rights and defenses that may be available at law or equity.

Very Truly Yours,
Neri Construction, LLC.

Vincent A. Neri
Manager

cc:    E. Doernberger, Esq., SD&V
D. Doyle, Esq.
John B. O'Keefe, Marsh


EXHIBIT
C

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed via first class mail, postage pre-paid, to the following counsel of record on March 12, 2004:

Dennis C. Cavanaugh, Esq.
Peter E. Strniste, Jr., Esq.
Halloran & Sage, LLP
225 Asylum Street
Hartford, CT 06103

David S. Doyle, Esq.
The Marcus Law Firm
111 Whitney Avenue
New Haven, CT 06510

Edwin L. Doernberger