UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
                                :
UNITED STATES FIDELITY &        :
GUARANTY, CO.                   :
                                :
     Plaintiff,                 :
                                :
v.                              :  Civil No. 3:02CV00524(AWT)
                                :
NERI CONSTRUCTION, LLC, THE     :
NERI CORP., JOAN C. NERI,       :
VINCENT A. NERI, and MICHELLE   :
NERI,                           :
                                :
     Defendants.                :
                                :
-------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff United States Fidelity & Guaranty Co. ("USF&G") brings this action against Neri Construction, LLC ("Neri Construction"), the Neri Corp., Joan C. Neri, Vincent A. Neri, and Michelle Neri.  The Complaint contains five counts.  The plaintiff has moved for summary judgment on Count III, in which the plaintiff alleges that the defendants breached their obligations under a Master Surety Agreement and that the defendants are obligated to pay losses, expenses, attorneys' fees, and costs incurred by USF&G.  For the reasons set forth below, the plaintiff's motion for summary judgment is being granted in part and denied without prejudice in part.

**I.  FACTUAL BACKGROUND**

On or about March 5, 1999, Elm Haven Construction Limited

Partnership ("EHC"), which had entered into a contract with a general contractor for a project in New Haven, Connecticut known as Elm Haven Phase 1B/1C (the "Project"), entered into a subcontract with Neri Construction pursuant to which Neri Construction was obligated to provide labor, materials, and equipment for the Project.  Pursuant to the subcontract, Neri Construction posted a performance bond and a payment bond for the benefit of its subcontractors and suppliers.  Both were issued by USF&G.  The defendants had entered into a Master Surety Agreement that required, _inter alia_, that the defendants exonerate and indemnify USF&G if Neri Construction failed to perform any of its obligations under the performance bond and/or payment bond.  The Master Surety Agreement provides, in part:

> III.  (A) UNDERSIGNED shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all demands, claims, liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY for reason of: (1) SURETY having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED's failure to perform or comply with any of the provisions of this AGREEMENT.  (B) In order to exonerate, hold harmless, and indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds before SURETY makes any payment; such funds shall be, at SURETY'S option, money or property, or liens or security interests in property.  (The amount of such money or property or the value of the property to become subject to liens or security interests, shall be determined by SURETY.)  (C) SURETY may reduce the amount of the UNDERSIGNED'S liability to SURETY hereunder by applying to such liability any money payable to UNDERSIGNED by SURETY; (Such liability may arise from UNDERSIGNED'S obligation to exonerate, to hold harmless and to indemnify SURETY

and may be liquidated or unliquidated; and, the "money payable to UNDERSIGNED" may be, but is not limited to, any money payable by SURETY as an insurer of the UNDERSIGNED or another PERSON to return to UNDERSIGNED an unearned or other premium or to settle a claim of UNDERSIGNED against SURETY or a PERSON insured by SURETY.)

IV.  (A) The liability of UNDERSIGNED hereunder shall extend to and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might be liable therefor; (2) such payments were necessary or advisable to protect any of SURETY's rights or to avoid or lessen SURETY's liability or alleged liability; (B) the liability of the UNDERSIGNED to SURETY shall include interest from the date of SURETY's payments at the maximum rate permitted in the jurisdiction in which this AGREEMENT is enforced, or is enforceable; (C) the voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of SURETY shall be prima facie evidence of the fact and extent of the liability of the UNDERSIGNED to SURETY.

V.  (A) Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising; (B) each UNDERSIGNED is the agent for all UNDERSIGNED for the purpose of accepting service of any process in the jurisdiction in which the UNDERSIGNED accepting process resides, is domiciled, is doing business or is found; (C) in the event SURETY should file suit at law or in equity to enforce the terms of this AGREEMENT, SURETY shall be entitled to recover its own reasonable attorneys' fees and expenses from UNDERSIGNED in connection with such suit.

 In July 2001, EHC initiated an action (the "EHC Action") against Neri Construction and USF&G, alleging that Neri Construction had not performed obligations with respect to the Project and that USF&G had breached its obligations under the bonds, including the implied covenant of good faith and fair

dealing.  Neri Construction requested that USF&G be represented by the same counsel who represented Neri Construction, but USF&G informed Neri Construction that it would have its own counsel because EHC had made an allegation of bad faith against USF&G. USF&G filed a motion for summary judgment against EHC, which was granted on August 22, 2003.  In addition, two subcontractors on the Project made claims against one of the bonds claiming nonpayment by Neri Construction.  USF&G notified the defendants of the claims, and also of their obligation to indemnify USF&G and pay its attorneys' fees, costs, and expenses resulting from the defense of the EHC Action.

USF&G initiated the instant action (the "Enforcement Action") against the defendants, seeking to enforce the terms of the Master Surety Agreement.  On July 8, 2002, USF&G was granted a prejudgment remedy in the amount of $34,669.67.  On November 7, 2002, USF&G obtained a preliminary injunction requiring the defendants to post collateral in the amount of $655,954.00 to cover USF&G's exposure in the EHC Action.[1]  On January 10, 2003,

---

[1] The plaintiff in the EHC Action appealed and the grant of summary judgment in favor of USF&G was upheld by a different panel of the Second Circuit after oral argument in the appeal in this case but before the panel in this case issued its summary order on September 13, 2004.  The panel in this case then vacated the preliminary injunction because the EHC Action had resulted in USF&G not having to pay anything to EHC.  The Second Circuit noted that this court had not ruled with respect to collateral for legal expenses incurred in the EHC Action, and stated that this issue should therefore be addressed in the first instance by this court.

Carl Neri sent a letter to Schoenhaar stating that Neri Construction and Neri Corp. had "always been willing to risk collateral to protect USF&G."  (Carl Neri Aff., at ¶ 10); Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Opposition") (Doc. No. 86), at Exhibit A.  However, on a previous occasion, the defendants admitted that they "did contest the amount of the prejudgment remedy sought by USF&G."  Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction ("Defendants' Opposition to PI") (Doc. No. 51), at 2.  Furthermore, the defendants also opposed the plaintiff's request for collateral.  Id. at 3.  At the hearing on USF&G's motion for a preliminary injunction, the defendants[2] took the position that Section III(B) of the Master Surety Agreement should be interpreted so as not to require that the indemnitors post collateral until the surety contemplated making a payment on the bonds.  (Tr. Nov. 6, 2002, at 32).  The defendants argued that "the fact that a claim was filed does not indicate in any way that the surety is going to have to make any payment whatsoever." Id. at 37.  The defendants conceded that, at that point, USF&G was entitled to collateral, but took the position that USF&G's "demand was unreasonable" and had not been

---

[2] Attorney Doernberger argued on behalf of all the defendants.  Attorney Doyle, counsel for Vincent and Michelle Neri, represented that the individual defendants had all adopted the same positions with respect to this issue.  (Tr. Nov. 6, 2002, at 6).

5

honored for that reason.  Id. at 29.  The defendants argued that "because USF&G failed to establish any amount that it would pay in the future to Elm Haven, USF&G [was] not entitled to a preliminary injunction for anything greater than attorney's fees."  (Defendant's Opposition to PI, at 6).

As of July 29, 2004, USF&G had incurred a total of $155,911.61 in attorneys' fees and costs in defending the EHC Action and in prosecuting this Enforcement Action.  The defendants argue that this amount is unreasonable.  USF&G seeks $7,500.00 it anticipated would be incurred in connection with this motion for summary judgment.  USF&G also seeks $1,056.60 in administrative and other expenses incurred in defending claims against the payment bond, in defending the EHC Action, and in prosecuting this Enforcement Action.

**II.  LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable

inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trustees of Columbia University, 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

**III. DISCUSSION**

   **A. EHC Action**

      **1. Liability for Amounts Paid by USF&G**

The amounts paid by USF&G in connection with the EHC Action are covered by Section IV(A) of the Master Surety Agreement. Those amounts are all attorneys' fees, costs and expenses. Section IV(C) of the Master Surety Agreement provides that vouchers or other evidence of payment are prima facie evidence of the fact and extent of liability of the defendants to USF&G.

In a similar case where a surety asserted a right to indemnification of attorneys' fees incurred in defending against

8

a subcontractor's lawsuit, the Court of Appeals for the District of Columbia Circuit concluded that a "good faith" provision, like the one in Section IV(A) of the Master Surety Agreement, means that the attorneys' fees must be reasonable. See Ideal Electronic Security Co., Inc. v. International Fidelity Insurance Co., 129 F.3d 143, 150 (D.C. Cir. 1997) ("Indeed, if good faith in this context did not include reasonableness, the indemnitee would have no incentive to police its attorneys' activities and charges . . . . Such a result would make no sense."). The court concluded that, in such a context, a "prima facie evidence" clause "simply shifts to [the indemnitor] the burden of proving that the fees claimed are excessive." Id. at 151; see also Engbrock v. Federal Ins. Co., 370 F.2d 784, 786 (5th Cir. 1967)(under contract with "prima facie evidence" clause, indemnitor "may successfully attack payments made by Surety only by pleading and proving fraud or lack of good faith by Surety.").

"Prima facie evidence" clauses are generally found "valid and enforceable." See John W. Hinchey, Surety's Performance Over Protest of Principal: Considerations and Risks, 22 Tort & Ins. L.J. 133, 147 (1986). Therefore, once USF&G presented such vouchers or other evidence of payment, it established the liability of the defendants, and with respect to the amount of the liability, the burden shifted to the defendants to prove that the attorneys' fees, costs and expenses claimed, are excessive.

The defendants appear to argue that they have no liability because USF&G should not have employed its own counsel for its defense in the EHC Action, but, rather, should have used the counsel which the defendants requested represent both Neri Construction and USF&G.  In Ideal, the court addressed a similar argument.  There, the surety and the indemnitor had entered into an agreement whereby the surety waived its right to mount a separate defense only if the indemnitor provided collateral.  Ideal, 129 F.3d at 149-50.  Here, there is no such contractual provision, but here, as in Ideal, the indemnitor opposed the surety's request for collateral.[3]  In Ideal, the court's analysis was as follows:

> Regardless of the purported strength or weakness of [the claimant's] claims against [surety], no reasonable fact-finder could find that [surety's] decision to hire separate counsel to defend against [claimant's] claims was unreasonable, in light of [indemnitor's] inability or unwillingness to post satisfactory collateral to cover the amount for which [claimant] sought to hold [surety] liable.

129 F.3d at 150.  Similarly, in this case, the defendants have not presented evidence that shows that it was unreasonable for USF&G to retain its own counsel to defend itself in the EHC Action.  To the contrary, the record demonstrates that it was

---

[3] The court notes that although the defendants claim that they were always willing to post collateral (See Carl Neri Aff., at ¶ 10), they did, in fact, oppose the plaintiff's request for collateral. (See Defendants' Opposition to PI, at 3); (Tr. Nov. 6, 2002, at 29).  Otherwise, this court would not have held the hearing on USF&G's motion for a preliminary injunction.

quite reasonable for USF&G to hire separate counsel where the defendants had not posted collateral and contested vigorously the amount of collateral they should be required to post under the terms of the Master Surety Agreement.

The defendants' other objections pertaining to the EHC Action concern the amount of attorneys' fees, costs and expenses claimed, i.e. the extent as opposed to the fact of liability. Accordingly, the plaintiff's motion for summary judgment is being granted on the issue of the defendants' liability for reasonable attorneys' fees, costs and expenses incurred by USF&G in defending the EHC Action.

### 2. Amount of Attorneys' Fees, Costs and Expenses

As the D.C. Circuit discussed in Ideal, "a contractual provision stipulating how the amount of the attorney's fees award shall be calculated 'creates a rebuttable presumption that the stipulated amount is reasonable.'" 129 F.3d at 150. In such a situation, if a proper challenge is made to the amount of fees, then the court determines reasonableness. See id. at 150.

In Ideal, the D.C. Circuit vacated the district court's award of attorneys' fees because the billing statements on which the district court relied in making the award had been redacted. The court concluded that "redaction of portions of the billing statements withholds from Ideal information essential to Ideal's efforts to meet [its] burden" of proving the fees claimed were

excessive. 129 F.3d at 151. The court explained:

> As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole. The reasonableness of any one entry on an attorney's billing statement is likely to be informed by other charges incurred for the same general service.

Ideal, 129 F.3d at 151.

Here, after initially submitting redacted billing statements, USF&G submitted with its reply memorandum evidence of the amount of attorneys' fees, costs and expenses incurred in the form of unredacted billing statements. However, as the defendants point out, USF&G has not clearly identified which attorneys' fees, costs and expenses are attributable to the EHC Action and which are attributable to this Enforcement Action. All the billing statements appear to have the caption, "(USF&G) v. Elm Haven Construction." The defendants have the right to know precisely what portions of the total attorneys' fees, costs and expenses claimed are attributable to each action as they endeavor to meet their burden of proving the attorneys' fees, costs, and expenses in the EHC Action are excessive. Accordingly, the plaintiff's motion for summary judgment is being denied without prejudice as to the amount of attorneys' fees, costs and expenses incurred by USF&G in connection with the EHC Action.

### B. Enforcement Action

#### 1. Liability for Attorneys' Fees and Expenses

Section V(C) of the Master Surety Agreement provides that USF&G is entitled to recover from the defendants reasonable attorneys' fees and expenses for the Enforcement Action. "[W]hen a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993). In McGuire, the jury had determined that a party was entitled to receive an award of attorneys' fees. The Second Circuit explained that while it was appropriate for the jury to determine the fact of liability, the determination of "the amount of attorneys' fees, even when awarded under a contract, is a post-judgment matter collateral to a decision on the merits." Id. at 1315. The court cited pragmatic reasons for dealing with attorneys' fees in this manner; it noted that such an approach avoided a situation where an attorney must "struggl[e] to prove the amount of fees to which he is entitled, but never being able to do so because he must prove the value of his last words even as he speaks them . . . ." Id. at 1316.

USF&G contends that the "prima facie standard . . . clearly speaks to *any and all liability* of the Defendants to the Surety."

13

Plaintiff's Memorandum of Law in Reply to Defendants', Neri Construction, LLC, the Neri Corp., and Joan Neri, Objection to Motion for Summary Judgment ("Plaintiff's Reply") (Doc. No. 92), at 2.  However, the court concludes that the Master Surety Agreement is ambiguous on the question of whether the "prima facie evidence" clause in Section IV(C) covers the surety's claims for attorneys' fees and expenses pursuant to Section V(C). Section IV(A) of the Master Surety Agreement covers all amounts paid by the surety described in Sections IV(A)(1) and (2). Section IV(B) addresses interest measured from the date of the surety's payments.  Section IV(C), which includes the "prima facie evidence" clause, then refers to evidence of "such payment(s) or an itemized statement of payment(s)" constituting prima facie evidence.  Section V of the Master Surety Agreement addresses lawsuits brought by the surety, and Section V(C) provides for payment by the indemnitors of the surety's reasonable attorneys' fees and expenses in connection with a suit to enforce the terms of the Master Surety Agreement.  It is at least as logical that the reference in Section IV(C) to "such payment(s) or an itemized statement of payment(s)" refers only to payments described in Sections IV(A) and (B) as it is that the reference to "such payment(s) or an itemized statement of payment(s)" refers to amounts the surety is entitled to recover as attorneys' fees and expenses pursuant to Section V, which

addresses an entirely different subject matter.

"Connecticut contract law provides that an ambiguous contract must be construed against its drafter . . ." Mehler v. Terminix Intern. Co. L.P., 205 F.3d 44, 52 (2000). Accordingly, the "prima facie evidence" clause does not apply to USF&G's claims in this Enforcement Action.

In the absence of the "prima facie evidence" clause, the burden is on the plaintiff to demonstrate the defendants' liability and also to show that the attorneys' fees and expenses it incurred in this Enforcement Action are reasonable, as there has been no burden-shifting to the indemnitors. See, e.g., Harris v. Howard University, Inc., 28 F.Supp.2d 1, 15 (D. D.C. 1998) ("Normally, in an indemnification action, the burden falls upon the indemnitee to prove all elements of his claim."). Therefore, on the issue of liability at the summary judgment stage, the plaintiff must present sufficient evidence to show that there is no genuine issue of material fact as to the defendants' liability for attorneys' fees and expenses for this Enforcement Action.

The plaintiff has met that burden. There is no genuine issue here as to the fact that the plaintiff incurred attorneys' fees in seeking to enforce the Master Surety Agreement, and Section V(C) of the Master Surety Agreement provides for recovery by USF&G from the defendants of its reasonable attorneys' fees

15

and expenses in connection with a "suit at law or in equity to enforce the terms" of the agreement.

Accordingly, the plaintiff's motion for summary judgment is being granted on the issue of the defendants' liability for reasonable attorneys' fees and expenses incurred by USF&G in prosecuting this Enforcement Action.

### 2. Amount of Attorneys' Fees and Expenses

As the determination of the amount of attorneys' fees and expenses incurred in this Enforcement Action is, under McGuire, a post-judgment matter, the court makes that determination at a hearing after judgment has been entered on the issue of liability. See McGuire, 1 F.3d at 1315. Also, consistent with Ideal, the plaintiff must identify which attorneys' fees and expenses are attributable to the EHC Action and which are attributable to this Enforcement Action.

### C. Administrative and Other Expenses

USF&G states that it has incurred $1,056.60 in administrative and other expenses in defending against the EHC Action, in defending claims against the payment bond, and in prosecuting this Enforcement Action. The defendants state that USF&G has failed to provide vouchers or other evidence of payment. USF&G states that Exhibit E to its memorandum contains such evidence. However, this documentation shows thousands of dollars in charges, and no charge for $1,056.60, and the court

16

cannot identify relevant documentation. Therefore, the plaintiff's motion for summary judgment as to these administrative and other expenses is being denied without prejudice. The court notes that the plaintiff must also identify which of these expenses are attributable to the EHC Action and which are attributable to this Enforcement Action.

**D.  Anticipated Attorneys' Fees**

The terms of the Master Surety Agreement do not provide for recovery of anticipated attorneys' fees for this Enforcement Action. Under McGuire, a determination of the amount of attorneys' fees is "an issue for the court to review after a finding of liability." 1 F.3d at 1316. Accordingly, the court will determine the amount of any anticipated fees based on a subsequent application.

**IV.  CONCLUSION**

For the reasons set forth above, United States Fidelity & Guaranty Company's Motion for Summary Judgment (Doc. No. 78) is hereby GRANTED in part, and DENIED without prejudice in part. The Clerk shall enter judgment in favor of USF&G on the issue of liability for USF&G's attorneys' fees, costs and expenses in the EHC Action and in this Enforcement Action.

Within 30 days, the plaintiff shall file a supplemental application identifying which portions of the billing statements are for the EHC Action and this Enforcement Action, respectively,

and stating the total attorneys' fees, costs and expenses for each action. The plaintiff shall include any supplemental or updated billing statements or other documentation. The defendants shall file any additional objections to the amount of attorneys' fees, costs and expenses within 21 days after the plaintiff files its supplemental application. Thereafter, the court will conduct a hearing on the amount of the attorneys' fees and expenses that will be awarded in connection with the EHC Action and this Enforcement Action.

    It is so ordered.

    Dated this 28th day of September 2006 at Hartford, Connecticut.

                                          /s/AWT
                                  Alvin W. Thompson
                            United States District Judge